## CHARLES E. EASTMAN v. JAMES W. CLEAVER.

*Logs and logging—Contract—Scale—Evidence—Bills and notes—Principal and surety.*

1. Where a contract for cutting and manufacturing logs into lumber provides that the product only is to be measured " when shipped," there is no occasion for a "woods scale," and testimony showing the amount of *logs cut* is immaterial.
2. It was competent for plaintiff to show why the notes for the alleged balance due him from defendant were, for purposes of discount, made nominally by plaintiff to defendant's order. As between each other it is competent to show who was principal and who was surety.

3. It was competent for plaintiff to testify whether the alleged set-tlement with defendant was final, that point being one on which defendant raised a dispute; and had himself testified.

Error to Tuscola. (Beach, J.) Argued October 12, 1888. Decided October 26, 1888.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Black, Gray & Corcoran,* for appellant, contended:

1. When a contract expressly provides for a particular kind of measurement, that only can be used or given in evidence; citing *Busch v. Kilborne,* 40 Mich. 299; *Perkins v. Hoyt,* 35 Id. 506; *Davis v. Bush,* 28 Id. 438.

*T. W. Atwood* and *T. C. Quinn,* for defendant, con-tended:

1. It was competent for the parties to agree that Cleaver should have notice of the shipment, that he might be present at the contemplated measurement, and no other consideration than the mutual understanding was necessary; citing *Gillett v. Bowman,* 43 Mich. 479; *Mason v. Phelps,* 48 Id. 130.

2. It was proper to allow Kaskinette to state *facts* about the man-ner of Hile's measurement, and his answer was not in the nature of expert evidence; citing *Busch v. Kilborne,* 40 Mich. 297.

3. Evidence of what Hile said about the cull lumber, in connection with the scaling he was making for plaintiff, was admissible as part of the *res gestae;* citing 1 Greenl. Ev. § 113; *Cleveland v. Newsom,* 45 Mich. 62; *Joslin v. Ice Co.,* 53 Id. 322; *James v. Mining Co.,* 55 Id. 335, 345.

4. Under the circumstances, to exclude all evidence not in accord-ance with the terms of the contract as to measurement would be equivalent to denying all remedy; citing *Grice v. Noble,* 59 Mich. 515.

CAMPBELL, J. Plaintiff sued defendant on his prom-issory note to plaintiff's order for $400 and interest, dated at East Saginaw, November 30, 1885, and payable in 60 days. Defendant's plea was, in substance, that it was an accommodation note, given in renewal of a previous note

for the same purpose, made by Eastman and indorsed by defendant.    There was also a notice of set-off.

The defense, which in part prevailed, was on a somewhat different theory, to the effect that the note was given for an assumed balance, which was excessive. Plaintiff had judgment for only $80.50, and he brings error.

There were some not disputed facts out of which the controversy arose, as well as some disputed ones, on which questions of evidence and some other legal questions were raised.

On the 23d day of November, 1883, Cleaver undertook for the sum of $6 a thousand to cut and saw into lumber the white pine on certain lands in Delta county, converting the logs of 12, 14, and 16 feet long into such thicknesses as plaintiff should direct, using all care and diligence to avoid waste, using an edger, and keeping the lumber uniform in thickness and width, and turning the logs, when necessary to make the most valuable stock. He was further to haul it to the railroad side track at Beaver station, and pile and roof it accessible to the cars, in order for loading.    The price per thousand was to be given "as evidenced by measurement of the same when shipped."    Payments were to be made as Cleaver wanted them, but plaintiff reserved the right to keep back sufficient amount to keep himself safe.

Defendant sawed a certain disputed quantity of lumber, and delivered it in the first part of the year 1884.    Plaintiff claims that on an adjustment of their accounts in August, 1884, defendant was found to have been overpaid to the extent of nearly $800, for which he gave plaintiff a note for $400, and another for $300; plaintiff allowing for a disputed sum further.    After some renewals, the bank preferred to take plaintiff's own note as principal debtor, and accordingly defendant indorsed it.    After

further renewal, the note in suit was, as plaintiff claims, given for the same amount, in proper form, as defendant's own liability. Plaintiff's theory was that defendant sawed not more than 400,000 feet, of which a part consisted of mill culls. Defendant claims that he cut enough more to put plaintiff in his debt, and that this note was for plaintiff's accommodation. The difference would amount to considerably more than 100,000 feet. Plaintiff had the lumber measured just before shipment and after arrival at its ultimate destination, and it fell considerably short of 400,000 feet. This measurement was communicated to defendant, as appears from a letter of defendant, before July 7, 1884; and in that letter he did not dispute its correctness, or that of the account for advances making up the statement, showing a balance due of over $600. That letter was written July 2, 1884. A previous letter of June 17 enclosed a memorandum of measurements, and told defendant if he was not satisfied with the measurement of Mr. Hile he could have it measured at Escanaba, where it was to be sent for water carriage; that danger from fire made it necessary to send it forward.

If defendant got either of these letters,—one of which is shown by his own letter to have been received,—and made no objection to it, there would appear to be no basis for his defense. It does not appear very distinctly that he made any such objection before closing up the securities. But this question of fact we need not consider now.

Defendant's claim was that he cut some 600,000 feet of logs, which were all sawed and delivered, and that wastage would not reduce the product to much, if any, less than 500,000 feet; so that plaintiff was in his debt. He also claims that a parol agreement was made to have a joint measurement at Beaver station, and that the shipments were premature.

There are a good many errors assigned, but we shall only refer to the most important.

We do not think defendant could properly be allowed to show what logs he claimed to have cut. The contract was express that the product only was to be measured "when shipped." There was no occasion, therefore, for any measurement by scaling in the woods; and the testimony actually given of such scaling was very inexact. Defendant's own letters show that a good deal of the cork pine was unsound, and there was testimony further of considerable wastage otherwise. There was no apparent reason for guessing, when, besides the measurement of Mr. Hile, which was criticised, the lumber was shipped at Escanaba, and must have been measured when loaded, and when discharged. This testimony, as offered and put in, was not made relevant, and should have been excluded.

We see no reason why plaintiff should not have been allowed to show why the notes for defendant's balance, as he claimed it to be, were, for purposes of discount, made nominally by plaintiff to defendant's order. As between each other it is competent to show who was principal and who was surety. More or less testimony on this question got into the record on defendant's issue. We think plaintiff had a right to show all the facts.

One Kaskinette was allowed to give some very vague testimony in regard to methods of measurement adopted by Hile. He showed no knowledge which would qualify him to explain or correct this measurement, and what he said was mostly not testimony. He was also allowed, as we understand the record, to show some purely irrelevant matters, which may have tended to confuse the issues.

Mr. Eastman was not allowed to answer this question:

"You may state whether or not it was agreed between you, when that matter was settled, that it was a final settlement."

This was really the most important issue in the case. It appeared that plaintiff, to reach this settlement, made various concessions beyond what he claimed he was bound to make, in order to bring it about.    There was strong evidence from which no other conclusion could be drawn, but it' was nevertheless a point on which defendant raised a dispute, and had himself testified.    It was clearly admissible.

The record is incumbered with more or less irrelevant matter, which was objected to.    But it is so manifest from the result that the jury must have become confused in some way, and probably by the more important features of the controversy, that we need not go further into matters not likely to come up again.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.